UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KRISTY L. BOLIN-MCNEELY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 15-CV-0302-CVE-TLW |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner, Social** ) | |
| **Security Administration,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Before this Court is the report and recommendation (Dkt. # 22) of Magistrate Judge T. Lane Wilson recommending that the Court affirm the decision of the Commissioner of the Social Security Administration denying plaintiff Social Security disability benefits. Plaintiff has filed an objection (Dkt. # 23) to the report and recommendation and seeks reversal of the Commissioner's decision, arguing that the Administrative Law Judge (ALJ) committed several errors in evaluating plaintiff's claim. Defendant has not filed a response, and the time to do so has expired.

**I.**

On August 29, 2011, plaintiff protectively filed for Title XVI disability benefits, alleging that she had been disabled as of June 20, 2010. Dkt. # 11-2, at 21. Plaintiff's application stated that she suffered from various physical and psychological complaints that left her unable to work, including schizoaffective disorder, generalized anxiety disorder, borderline personality disorder, and fibromyalgia. Dkt. # 11-6, at 14. Plaintiff's claim was denied initially on February 9, 2012, and upon reconsideration on August 13, 2012. Dkt. # 11-2, at 21.

Plaintiff appeared at the hearing and was represented by an attorney. Plaintiff was 35 years old at the date of the hearing and testified that she dropped out of high school in the eleventh grade. Dkt. # 11-2, at 47. Plaintiff testified that she lived in a house with her boyfriend, her two minor children, and her boyfriend's brother. Id. at 48. Plaintiff stated that she suffered from chest pains if she over-exerted herself, that she could stand for no more than 10 to 15 minutes, and that she experienced pins and needles sensations in her legs if she stood for any longer. Id. at 49-50. Plaintiff stated that she also suffered from back spasms, constant headaches, fibromyalgia, and acid reflux. Id. at 51-52. Plaintiff also testified that she suffered from various mental health issues, including anxiety, depression, and schizoaffective disorder. Id. at 53, 55. Plaintiff stated that she suffered from anxiety attacks that were so severe that she would black out and sometimes "[find herself] hiding in a corner or something and didn't even know that [she] was there." Id. at 54-55. Plaintiff also stated that she heard voices and saw people who were not actually there. Id. at 55.

On November 20, 2013, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 37. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Id. at 23. The ALJ found that plaintiff had severe impairments affecting her ability to work, including fibromyalgia, obesity, associated arthritic pain in the back, hips, and knees, coronary artery disease, schizoaffective disorder, and generalized anxiety disorder. Id. The ALJ further found that these impairments or combination of impairments were not equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 24. The ALJ formulated plaintiff's residual functional capacity (RFC), taking into account the medical evidence and testimony. Id. at 27. The ALJ determined that plaintiff could perform sedentary work with the following limitations: plaintiff could occasionally lift and/or carry ten pounds, frequently lift and/or

carry up to ten pounds, stand and/or walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday, with normal breaks. Id. The ALJ also found that plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but was limited to simple, repetitive tasks, could relate to supervisors and co-workers only superficially, and could not work with the public. Id.

After summarizing the evidence used to formulate plaintiff's RFC, the ALJ stated that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Id. at 28. Considering plaintiff's RFC, the ALJ determined that plaintiff had no past relevant work, but that she could perform other occupations existing in significant numbers in the national economy. Id. at 36. These occupations included assembler, clerical mailer, and escort driver. Id. at 37. The ALJ included these occupations based upon the testimony of a vocational expert (VE) who identified each position based upon its Dictionary of Occupational Titles (DOT) identification number. Id. Based on these determinations, the ALJ concluded that "[plaintiff] has not been under a disability, as defined in the Social Security Act, since August 29, 2011, the date the application was filed[.]" Id.

On April 6, 2015, the Appeal Council denied plaintiff's request for review of the ALJ's decision. Id. at 2. Plaintiff thereafter sought judicial review, arguing that the ALJ failed to include his own findings of limitations in formulating plaintiff's RFC, that the ALJ failed to include plaintiff's obesity as a severe impairment in formulating of plaintiff's RFC, that the RFC is unsupported by medical opinion evidence, that the ALJ erred in his credibility determination, and

that the ALJ's decision at step five is legally and factually flawed. Dkt. # 17, at 4. The Court referred the case to the magistrate judge, who entered a report and recommendation recommending that the Court affirm the ALJ's decision. Dkt. # 22. Plaintiff has objected to the report and recommendation, asserting that the magistrate judge erred in concluding: (1) that the ALJ properly evaluated medical opinion evidence of plaintiff's treating orthopedist; (2) that the ALJ properly assessed plaintiff's credibility, and (3) that the ALJ did not err by failing to ensure the VE's testimony was consistent with the DOT. Dkt. # 23.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

## III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five-step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the

> ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ decided the case at step five of the analysis, concluding that plaintiff could perform other work existing in significant numbers in the national economy. Dkt. # 11-2, at 37. Having so decided, the ALJ found plaintiff not disabled and denied her application for benefits. Id. The magistrate judge recommended affirming the ALJ's decision, concluding that the ALJ properly assessed plaintiff's claim. Dkt. # 22. The magistrate judge determined that the ALJ committed no error in formulating plaintiff's RFC, specifically as it related to plaintiff's mental limitations and obesity; that the ALJ properly considered medical opinion evidence, including that of plaintiff's

5

treating orthopedist; that the ALJ's credibility determination was supported by substantial evidence; and that the ALJ's failure to specifically question whether the VE's testimony was consistent with the DOT was harmless because two of the three jobs the VE identified were consistent with plaintiff's RFC. Id. Plaintiff has filed an objection to the magistrate judge's report and recommendation, arguing that the ALJ's decision contains the following errors requiring reversal: (1) the ALJ failed to address in failing to discuss the opinion evidence of plaintiff's treating orthopedist; (2) the ALJ erred in assessing plaintiff's credibility; and (3) the ALJ erred by failing to ensure that the VE's testimony was consistent with the DOT, as required by applicable standards. Dkt. # 23.

**A.**

Plaintiff first asserts that the ALJ erred by failing to discuss the opinion evidence of plaintiff's treating orthopedist, Muzzaffar Hussain, M.D., and by failing to identify how he weighed Dr. Hussain's opinions, particularly as it relates to plaintiff's left knee. Dkt. # 23, at 1. Plaintiff asserts that the ALJ gave only a general summary of Dr. Hussain's records and did not specifically state the weight he afforded Dr. Hussain's opinions. Id. at 1-2. As the magistrate judge noted in determining that the ALJ's failure to explicitly state what weight he assigned this opinion was harmless error,

> The ALJ discussed Dr. Hussain's treatment records in detail, noting that Dr. Hussain targeted plaintiffs's hip, back, and knee pain. Based on those records, the ALJ found that plaintiff's "pain does affect the quality of her life, and her sleep." The failure to assign a weight to a treating physician's opinion does not always constitute reversible error. See Kruse v. Astrue 436 F. App'x 879, 882-83 (10th Cir. 2011) (unpublished) (holding that the ALJ did not commit reversible error in failing to "state a specific weight" attached to a treating physician's opinion where the ALJ's explanation made it clear that the ALJ attached little weight to the opinion).

6

Dkt. # 22, at 16 (citations omitted). The Court agrees with the magistrate judge's assessment that the ALJ did not commit reversible error in failing to state a specific weight given to Dr. Hussain's opinions, because the ALJ's decision demonstrates that the ALJ attached some weight to Dr. Hussain's opinions. The ALJ summarized Dr. Hussain's treatment of plaintiff, including steroid injections, prescription pain pills, and imaging, to determine the nature of plaintiff's condition, before concluding that plaintiff's "pain does affect the quality of her life, and her sleep." Id. at 30. This concluding statement demonstrates that the ALJ gave weight to Dr. Hussain's opinions and treatment records, despite the absence of a specific statement. Because the ALJ's decision demonstrates that he afforded some weight to Dr. Hussain's opinions, he committed no reversible error by failing to specifically state a weight. See Kruse, 436 F. App'x at 882-83.[1] The ALJ committed no error as it relates to the opinion evidence of plaintiff's treating orthopedist, Dr. Hussain.

**B.**

Plaintiff also argues that the ALJ erred in his credibility determination, asserting that it is not supported by substantial evidence, specifically arguing that the ALJ relied on a single note in a hospital record regarding plaintiff's use of prescription medication not prescribed to her to determine that plaintiff was not credible. Dkt. # 23, at 2.

"Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to

---

[1] This and other unpublished opinions are not precedential and may be used for their persuasive value only. Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132. An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995). However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

In finding that plaintiff was not credible as to her claims of disabling pain, the ALJ first summarized the objective medical evidence before stating that "[plaintiff's] statements about her impairments and their impact on her ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the [plaintiff's] alleged symptoms [] and documentation in the file." Dkt. # 11-2, at 33. Despite plaintiff's assertion to the contrary, the ALJ did not make his credibility determination based upon a single hospital record regarding plaintiff's use of prescription medication to which she did not hold a prescription. Id. Instead, the ALJ

considered plaintiff's "weak work record," which included years where she did not work at all, even before her claimed onset date, and her denial of substance abuse in the time since she applied for disability benefits. Id.  The ALJ noted that plaintiff changed her story about the last time she had used an illegal substance, noted that she had received emergency treatment for "slurred speech, altered mental state and disorientation," and that she had denied that the emergency situation was the result of substance abuse, but later tested positive for prescription medications for which she did not have a prescription. Id.  The ALJ concluded that plaintiff's "failure to be truthful about her substance use and the apparent use of drugs and medications not prescribed to mitigate symptoms, while alleging that she is unable to work because of debilitating anxiety, given the poor work record reduces the [plaintiff's] credibility." Id.

Plaintiff asserts that the ALJ erred by considering plaintiff's past untruthfulness regarding her drug use as a negative credibility factor. Dkt. # 23, at 2-3.  Plaintiff asserts that an ALJ must consider factors relevant to a plaintiff's claimed symptoms, and should not base a credibility determination on a plaintiff's character. Id. at 3.  In considering a plaintiff's credibility, an ALJ may consider numerous factors, including

> the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ considered relevant factors in making his credibility including inconsistencies between plaintiffs reports of activities of daily living and the objective evidence in the record.  Dkt. # 11-2, at 25.  The ALJ specifically identified discrepancies in plaintiff's assertion that she was able to perform only limited activities of daily

9

living, including plaintiff's statements that she needed help and reminders to perform daily activities, but that she could care for her children, take medications, do chores, and attend doctor's appointments. Id. at 25-26. And the ALJ's discussion of plaintiff's dishonesty regarding prescription and illegal drug abuse as a factor undermining plaintiff's credibility is both an appropriate measure of credibility peculiarly within the judgment of the ALJ and supported by substantial evidence. The ALJ provided specific evidence of plaintiff's untruthfulness regarding drug abuse and noted that plaintiff's failure to be honest and forthcoming about drug abuse reduced plaintiff's credibility. Id. at 33.

The ALJ also specifically identified objective medical evidence that conflicted with plaintiff's subjective complaints of pain, including medical records showing that plaintiff's heart condition was not as severe as she alleged and a report from plaintiff's neurologist stating that medication had improved plaintiff's headaches with no mention of adverse side effects. Id. at 33-34. The ALJ concluded that, "in consideration of all medical evidence, there appears to be some inconsistency regarding functional limitations and allegations, yielding to a partial allegation credibility assumption." Id. at 34. The ALJ closely and affirmatively linked his credibility determination to substantial medical evidence. The ALJ did not err in his credibility assessment of plaintiff.

## C.

Plaintiff finally argues that the ALJ erred in his finding at step five because the ALJ failed to inquire of the VE whether his testimony was consistent with the DOT, as the legal standard requires, and asserts and the VE's testimony about certain occupations conflicted with plaintiff's RFC. Dkt. # 23, at 3-4.

In considering the testimony of a VE, the ALJ must ask the VE how his testimony corresponds with the DOT and obtain a reasonable explanation for any discrepancy between the VE's testimony and the DOT. Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005) (citing Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999)). Although the ALJ did not specifically ask the VE whether his testimony was consistent with the DOT when the VE testified regarding potential occupations plaintiff could perform, the VE provided DOT identifying numbers for each of the occupations he discussed. Dkt. # 11-2, at 59-61. This is strong evidence that the VE's testimony was consistent with the DOT. Further, the ALJ asked the VE specific questions regarding consistency with the DOT, including questions about the level of exertion and amount of interaction with others for each potential occupation. See id.

And a failure to ask a VE whether his testimony is consistent with the DOT is harmless so long as no conflicts exist. Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009). Plaintiff argues that the VE's testimony conflicts with the DOT as it relates to the job of escort driver, because that job would require frequent interaction with others and the VE included that position as one that required minimal interaction with others. Dkt. # 23, at 3-4. The magistrate judge determined that any conflict between the VE's description of the position of escort driver and the DOT definition was harmless because the VE identified two other jobs that plaintiff could perform with limited interaction with others. Dkt. # 22, at 20. The Court agrees with the magistrate judge's assessment. Even assuming a conflict between the DOT and the VE's description of the position of escort driver, any such error is harmless when the two other positions identified comport with plaintiff's limitations as described by her RFC. See Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009) (affirming an ALJ's decision where substantial evidence showed that plaintiff could perform one

job identified by VE, even when the ALJ relied on two other erroneous positions).  The record sufficiently demonstrates that the VE's testimony was consistent with the DOT, even if the ALJ's opinion does not perfectly comport with the standards for evaluating a VE's testimony.  See Keyes-Zachary, 695 F.3d at 1166 (explaining that technical perfection is not required in an ALJ's decision). As such, there is no reversible error at step five regarding the VE's consistency with the DOT.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 22) is **accepted**.  The Commissioner's decision to deny plaintiff's claim for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 30th day of August, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE